STUART E. GALE v. CITY OF ST. PAUL AND OTHERS.

96 N. W. (2d) 377.

March 20, 1959—No. 37,617.

*Roland J. Faricy, B. Warren Hart,* and *Faricy, Moore & Costello,* for appellant.

*Louis P. Sheahan,* Corporation Counsel, for respondent city.

*Silver, Goff, Ryan, Wallace & Newcome* and *Allen H. Aaron,* for respondent Linwood Stone Products Company, Inc.

FRANK T. GALLAGHER, JUSTICE.

This action was commenced by Stuart E. Gale as a taxpayer against defendants, city of St. Paul and Linwood Stone Products Company, hereafter referred to as Linwood. Plaintiff sought to have a contract awarded by the city to Linwood declared illegal and to enjoin and restrain defendants from entering into or performing the contract. A temporary restraining order was issued. The district court found in favor of defendants and denied plaintiff's alternative motion for amended findings or for a new trial. This appeal is from that order.

Pursuant to St. Paul City Charter, § 297(c), the city received competitive bids for the purchase of 8,000 tons of burned lime for the Municipal Water Department. The department furnished formal quotation forms as follows:

"FORMAL QUOTATION

"SEALED BIDS addressed to the Purchasing Agent for articles specified below will be received by this department until 2:00 P.M. o'clock Tuesday, *September 3, 1957* Quote lowest net price F.O.B. point of delivery. To be Delivered to *Water Department—Filtration Plant— St. Paul, Minnesota*

NOTE: EXCISE TAXES. THE CITY OF ST. PAUL IS EXEMPT FROM THE PAYMENT OF ANY FEDERAL EXCISE OR TRANSPORTATION TAX. DO NOT INCLUDE ANY OF THESE TAXES ON YOUR BID.

| Item | Quantity | Description | These columns to be used by bidder | |
|------|----------|-------------|------|-------|
| | | | Unit | Total |
| | | *Approx. 8000 tons of Burned Lime (Calcium Oxide)* *Delivery to be F.O.B. point of shipment"* | $ Per Ton | $ |

(Typewritten portions of the specifications are indicated by italics.)

It will be noted from the above that under the column "Description" is specified the approximate number of tons to be delivered and also it is stated "Delivery to be F.O.B. point of shipment."

Three bids were submitted on the above form; one was disqualified for failure to submit a check or bond as required. Linwood bid $11.10 per ton, or a total of $88,800. At the bottom of the form was typed "Freight Rate Per Net Ton—$7.20," without any further specific reference to the place from which the lime would be shipped. The additional cost of freight at that rate would make the total cost to the city $146,400, although this figure did not appear on the form.

Cutler-Magner Co. submitted a bid of $14.50 per ton or a total of $116,000 and typed on the form "F.O.B.—Duluth, Minnesota or Superior, Wisconsin." No freight rate was inserted on the bid, as was done by Linwood, but a separate letter accompanied the bid stating that the freight rate would be $4 per ton from either Duluth or Superior. Under this bid the total cost to the city would have been $148,000 delivered in St. Paul, or $1,600 more than the Linwood bid, although the $148,000 figure did not appear on the formal quotation. In another letter, dated September 5, 1957, two days after the bids were opened, Cutler-Magner Co. notified the city that its previous statement of the freight rates had been in error and that the rate from Duluth was $3.80 per ton.[1] Using that freight rate, the total cost to the city of the lime

---

[1]Correspondence between the manager of the water department and the purchasing agent on September 12, 1957, indicates that $3.80 per ton was the correct freight from Duluth to St. Paul but that it was to increase shortly to $4 per ton.

delivered in St. Paul would have been $146,400, or the same as the Linwood bid. In response to the letter notifying it of the error in the freight rate, the city replied that—

"* * * we are unable to make the change as you have requested. "The bid price and freight rate as indicated on your bid and in the letter submitted with the bid will, therefore, have to remain as originally submitted."

It would thus appear that the city considered the freight rate as quoted in the first letter as part of the bid and that the bid was final and could not be changed or corrected after the bids were opened.

Marblehead Lime Company, although disqualified, bid $23.60 per ton or a total of $188,800. It struck out the words "Delivery to be F.O.B. point of shipment" on the formal quotation but under the heading "These columns to be used by bidder" inserted *"Delivered Cost Price Filtration Plant St. Paul, Minnesota."* Also on the bottom of the bid it inserted:

"THE DELIVERED COST PRICE INCLUDES THE FREIGHT RATE, AND OF COURSE THE TRANSPORTATION TAX DOES NOT APPLY. QUOTATION IS SUBJECT TO CHANGE IN FREIGHT RATES. THE PRESENT RATE FROM SOUTH CHICAGO TO ST. PAUL, MINN. IS 43c PER CWT."

Thus it must be noted at the outset that there were three different interpretations of the specifications on the part of those submitting bids.

The contract was awarded to Linwood on September 23, 1957.

Plaintiff contends that the sole issue presented is whether the specifications which the city used in obtaining bids on the contract were so indefinite, uncertain, and contradictory that there has not been compliance with competitive bidding requirements. Linwood claims that the specifications were framed with such clarity as to enable bidders to compete intelligently and fairly with one another and to enable the city to evaluate the bids as submitted. It takes the position that it is not illegal for a municipality to call for bids on an f. o. b. point of shipment basis and argues that it was the low bidder and that the contract was properly awarded to it. The city contends, among other things, that the question as to whether or not specifications were so indefinite, uncertain, and contradictory as to prevent free and open competitive

bidding was a fact question to be determined by the court.

It is conceded that the city is subject to competitive bidding requirements.

The trial court found:

"* * * That said specifications * * * provided for the submission and quotation, in each instance, of any such formal bid, of the aforesaid net price for the bidder's sale and delivery of the subject material to Defendant City f. o. b. point of shipment, * * *.

"That said specifications were sufficiently definite to afford a common standard of competition in the subject bidding; that the same were sufficiently definite and precise to afford a proper basis for competitive bids and free from restrictions the effect of which might stifle competition; that there was no evidence in any manner or degree calculated to establish that either the request for bids or said specifications discouraged competitive bidding or eliminated competition; * * *."

■ We recognize the rule that the findings of the trial court are entitled to the same weight as a jury verdict and will not be disturbed on appeal unless they are manifestly contrary to the evidence and without reasonable evidentiary support. Inland Products Corp. v. Donovan Inc. 249 Minn. 387, 82 N. W. (2d) 691. The record does not disclose any oral testimony bearing on the alleged ambiguity, therefore a determination of whether the findings are manifestly contrary to the evidence and without reasonable evidentiary support must be based upon a consideration of the documents introduced in evidence.

Under the directions contained in the "Formal Quotation" form, bidders were instructed to "Quote lowest net price F.O.B. point of delivery"; next, that the lime was "To be Delivered to Water Department—Filtration Plant—St. Paul, Minnesota"; and further the typed line stated "Delivery to be F.O.B. point of shipment." Plaintiff contends that these three comments appearing on the form are sufficient in themselves to indicate an ambiguity as to what constituted "point of delivery." An examination of the bid forms submitted indicates lack of uniform treatment of the freight rates. The bid of Linwood included the freight rate at the bottom of the bid form, without reference to the point from which the lime was to be shipped. Cutler-Magner Co. included the freight rate from Duluth or Superior in a separate letter

accompanying the bid, and the third bid, although disqualified, included the freight rate for delivery at the filtration plant, St. Paul, in the total bid and stated at the bottom of the form "QUOTATION IS SUBJECT TO CHANGE IN FREIGHT RATES."

The directions and specifications on the form did not notify the bidders that the city would pay the freight. Also illustrative of the confusion is the letter from the city to Cutler-Magner Co. notifying them that they could not change the freight rate embodied in the letter accompanying their bid. It would appear that the city might have considered that it could not permit a change of the bid to the corrected freight rate because the "point of delivery" was St. Paul and consequently the freight rate was part of the bid, and that to change the rate would constitute a material change of a bid after the bids were opened, which is prohibited under competitive bidding requirements. See, Griswold v. County of Ramsey, 242 Minn. 529, 65 N. W. (2d) 647. On the other hand if the city considered the "point of delivery" in the Cutler-Magner Co. bid as "point of shipment," i. e., Duluth or Superior rather than St. Paul, the freight rate to St. Paul would not constitute a part of the bid and no reason would have existed for denying Cutler-Magner Co. the right to notify the city that the letter accompanying their bid stated the freight rate incorrectly.

We are satisfied from the foregoing that the formal quotation forms were ambiguous and uncertain as to whether the point of delivery was St. Paul or the point of shipment. It is therefore our opinion that a finding that the formal quotation forms called for a net price "F. O. B. point of shipment" is manifestly contrary to the record here as evidenced by the terms used on the forms and the various interpretations of the forms indicated by the bids submitted and related correspondence and that such finding is without reasonable evidentiary support.

Even though the specifications were ambiguous and uncertain the next question is: Were they sufficiently ambiguous and uncertain as to constitute a violation of the requirements of competitive bidding? In connection with that point we stated in the Griswold case (242 Minn. 536, 65 N. W. [2d] 652):

"* * * A fundamental purpose of competitive bidding is to deprive or limit the discretion of contract-making officials in the areas which

are susceptible to such abuses as fraud, favoritism, improvidence, and extravagance. Any competitive bidding procedure which defeats this fundamental purpose, even though it be set forth in the initial proposal to all bidders, invalidates the construction contract although subsequent events establish, as in the instant case, that no actual fraud was present."

Specifications must be sufficiently definite and precise to afford a basis for bids and they must be free from restrictions the effect of which would be to stifle competition. Duffy v. Village of Princeton, 240 Minn. 9, 11, 60 N. W. (2d) 27, 29.

It is our opinion that there was such ambiguity and uncertainty in the specifications as to constitute a violation of the requirements of competitive bidding in that the dual interpretation which the contract-making officials could place on the bids could provide an opportunity for favoritism and possibly a greater cost to the city. There is absolutely no suggestion of favoritism or any wrongdoing in the instant case. However, the circumstances indicate that Cutler-Magner Co. was precluded from submitting a corrected freight rate only for the reason that it constituted a substantial change in the bid. The bid was awarded to Linwood on the grounds that it was low bidder "F. O. B. point of shipment," or in this case, Davenport, Iowa. If the disparity between the first freight rate and the corrected freight rate submitted by Cutler-Magner Co. had been greater, the letting of the contract to Linwood might have resulted in a greater total cost to the city. Suppose for example the corrected freight rate of Cutler-Magner Co. had been $3.70 per ton instead of $3.80 per ton, then the cost to the city under that bid would have been $145,600 against $146,400 under the Linwood bid.

We are of the opinion that a finding that the specifications did not violate the requirements of competitive bidding is contrary to the evidence and without reasonable evidentiary support.

Clearly there has been no showing or suggestion that in the instant case the abuse afforded by the ambiguity has been exercised or that competitive bidding had been discouraged. However, it is not necessary to show wrongdoing. It is the potential of wrongdoing afforded by the ambiguity which is objectionable and which could stifle competition through favoritism. In view of the policy and purpose of competitive

bidding to promote honesty, economy, and aboveboard dealing in the letting of public contracts, there must be rigid adherence to the requirements to accomplish this purpose and a violation of the requirements compels a decision which nullifies the contract awarded. Coller v. City of St. Paul, 223 Minn. 376, 26 N. W. (2d) 835.

Reversed with directions to enter judgment nullifying the award of the contract to Linwood Stone Products Company, Inc., and granting an injunction enjoining the city and Linwood from entering into and performing a contract pursuant to the award.

Reversed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.