WILBUR P. DAVIS, FRANK HUMPHREYS v. CARLTON JERRY, COUNTY JUDGE; RAY J. ELLEN AND C. ROBERT MASON, ELECTION COMMISSIONERS

4705                                             432 S.W. 2d 831

Opinion Delivered October 28, 1968

*Shackleford & Shackleford* for appellants.

*Beryl Anthony Jr.* for appellees.

J. FRED JONES, Justice.    The appellants brought a taxpayer's suit in the Union County Chancery Court to enjoin the county judge and election commissioners from signing a contract for the purchase of voting machines.    The injunction was refused by the chancellor and appellants rely on the following points for reversal:

"There was a failure to comply with the county purchasing procedure act.

"There was a failure to comply with the freedom of information act."

At the general election in 1966 the people of Union County voted in favor of purchasing voting machines for that county.    Several meetings were held where the procedure for carrying out the mandate of the people was discussed by the election commissioners, the county officials and other interested parties, including representatives of the League of Women Voters who had initiated and sponsored the election.    Finally on July 15, 1967, the chairman of the county election com-

mission, the county judge and other interested citizens, including Mrs. Cash, a representative of the League of Women Voters, met and discussed the procedure to be followed in purchasing voting machines. The county judge was directed to seek bids and Mrs. Cash requested notice of the meeting when the bids would be opened. It was determined at this meeting that since there were only two eligible voting machine companies qualified to sell voting machines in Arkansas, it would not be necessary to follow the county purchasing procedure act of 1965, Ark. Stat. Ann. §§ 17-1601 through 1613, so it was decided that formal notices would be sent to the two eligible prospective bidders requesting bids which would be opened on June 29, 1967. This procedure was carried out by the county judge under the direction of the county election commission. Both of the eligible companies submitted sealed bids and sent representatives to be present at the opening of the bids on June 29.

On June 29, 1967, at the time and place agreed upon, the bids were opened and read, and at this point there is considerable conflict in the testimony as to what followed. Appellants say that the meeting went into executive session with everyone cleared from the room except the county judge, the election commissioners and the deputy prosecuting attorney, and that after the closed session, "outsiders" were again admitted to the room where it was announced that the election commission had voted unanimously to accept the lowest bid of Shoup Voting Machine Corporation. Appellees contend that after the bids were opened and read at the open meeting, identical questions were asked each voting machine company representative out of hearing of the other, and that when the voting machine company representatives were asked to step out of the room, others also left, without protest or objection, and without being asked to do so. Appellees contend, and so testified, that it was not their intention to exclude anyone from the meeting who desired to stay and that they did not hold a closed executive session to the exclusion

of the public in violation of the Freedom of Information Act of 1967, Ark. Stat. Ann. § 12-2801 (Supp. 1967).

Under the conflict of testimony on this point, we are unable to say that the chancellor's finding was against the preponderance of the evidence. This disposes of appellants' second point, but appellants' first point gives us more difficulty.

The purchase and use of voting machines in Arkansas was authorized by legislative Act 53 of 1963, now Ark. Stat. Ann. §§ 3-1701 through 1733 (Supp. 1967). Section 3-1703 of this statute reads in part as follows:

"The State Board of Election Commissioners or the County Board of Election Commissioners shall have the authority to purchase or lease-purchase voting machines and payment may be provided for in such manner as is deemed best for the interests of the State, County or City in which an affirmative vote is cast under the provisions of this section."

The County Purchasing Procedure Act (No. 52 of 1st Ex. Sess. 1965) was passed by the legislature two years after the voting machine act, supra. The County Purchasing Procedure Act, Ark. Stat. Ann. §§ 17-1601 through 17-1613 (Supp. 1967), is rather comprehensive in relation to all purchases by county officials with county funds in excess of $1,000.00 and is penal in nature.

Section 17-1601 is as follows:

"From and after the passage and approval of this Act [§§ 17-1601—17-1613] it shall be unlawful for any County Official within the several counties of the State of Arkansas, to make any purchases with county funds in excess of $1000.00, unless the hereinafter method of purchasing is followed. Pro-

vided, however, this Act shall not apply to any purchases under $1000.00 or purchase of commodities set forth in Section 6 [§17-1606] hereof.''

Section 17-1602 provides as follows:

''(a) 'Purchasing Official' shall mean any county official, individual, board or commission, or his or its lawfully designated agent with constitutional authority to contract or make purchases in behalf of the county.

(b) 'Commodities' shall mean all supplies, goods, material, equipment, machinery, facilities, personal property, and services, other than personal services, purchased for or on behalf of the county.

(c) 'Purchase Price' shall mean the full sale or bid price of any commodity, without any allowance for trade-in.

(d) 'Purchase' shall mean and include not only the outright purchase of a commodity but also the acquisition of commodities under rental-purchase agreements or lease-purchase agreements or any other type of agreements whereby the county has an option to buy the commodity and to apply the rental payments on the purchase price thereof.

(e) 'Formal Bidding' shall mean the procedure to be followed in the solicitation and receipt of sealed bids, wherein: (1) notice shall be given of the date, time and place of opening bids, and the names or a brief description and the specifications of the commodities for which bids are to be received, by one insertion in a newspaper with a general circulation in the county, not less than ten (10) days nor more than thirty [30] days prior to the date fixed for opening such bids; (2) the furnish-

ing, not less than ten [10] days in advance of the date fixed for opening the bids, of notices and bid forms to all eligible bidders on the bid list for the class of commodities on which bids are to be received, and the furnishing of notices and bid forms to all others requesting the same; and (3) by posting in a conspicuous place in the County Court House, at least (10) days in advance of the date fixed for opening bids, a copy of the notice of invitation to bid.

(f) 'Informal Bidder' shall mean the procedure to be followed in the solicitation and receipt of bids wherein: (1) notice or bid forms shall be furnished to all eligible bidders on the bid list for the particular commodity at least (5) five days prior to the date fixed for opening the bids; and (2) notice of invitation to bid shall be posted in a conspicuous place in the County Court House at least (5) five days prior to the opening of the bids.

(g) 'Open Market Purchases' shall mean those purchases of commodities by any purchasing official in which competitive bidding is not required.

(h) 'Trade-in Purchases' shall mean all purchases where offers must be included with the bids of each bidder for trade-in allowance for used commodities.

(i) 'Used or Second Hand Equipment or Machinery' shall mean any equipment or machinery having had at least 500 working hours prior use. Any purchase of used equipment or machinery shall be accompanied by a statement in writing from the vendor that such equipment or machinery has been used a minimum of 500 hours prior to such sale, and such written statement shall be filed with the county clerk at the time of purchase.''

Section 17-1603 provides as follows:

"All purchases of commodities made by any county purchasing official with county funds, except those specifically exempted by this act, shall be made as follows:

(a) Formal bidding shall be required in each instance in which the estimated purchase price shall equal or exceed $1,500.00.

(b) Informal bidding shall be required in each instance in which the estimated purchase price shall equal or exceed $1,000.00 but shall be less than $1,500.00.

(c) 'Open Market Purchases' may be made of any commodities where the purchase price thereof is less than $1000.00.

(d) No purchasing official shall parcel or split any item or items of commodities or estimates, with the intent or purpose to change the classification or to enable the purchase to be made under less restrictive procedure."

Sections 17-1607-08-09 provide as follows:

"The County Purchasing Official shall establish and maintain a list of eligible bidders covering all commodities and shall furnish copies of the same to all purchasing officials of the county. Any firm which desires to bid and have its name on the list of prospective bidders shall notify the purchasing official in writing of such desire, setting forth the class and description of commodities on which it desires to bid, and the firm's qualifications as a responsible bidder. Every effort shall be made by the purchasing official to notify all eligible bidders before purchases are made.

"(a) All bids which require either formal or informal bidding shall be opened in public and read at the time and place specified in the notice.

(b) The awarding of contracts need not be upon the day of the opening of the bids, but may be at a later date to be determined by the purchasing official. In order to assure that the bidder will accept and perform a contract under the terms of his bid the purchasing official may require bids to be accompanied by certified check or surety bond furnished by a surety company authorized to do business in this state, in such a reasonable amount as the purchasing official shall determine.

"(a) No contract shall be awarded or any purchase made until the same has been approved by the County Court, and no contract shall be binding on any county until the County Court shall have issued its order of approval.

(b) The Order of the County Court shall be properly docketed, and all documents and bids pertaining to the solicitation of bids and awarding of contracts under the purchasing procedure of this act shall be filed with the County Clerk, together with the order of the court which shall be filed by said County Clerk.

(c) No claim filed with the county for payment of any commodity, the purchase of which is regulated by this act, shall be paid, or no warrant shall be issued by the county clerk for the payment of same, until the order of the county court approving same shall have been issued and filed with the county clerk.''

It is noted that numerous commodities are exempted from the provisions of the act (§17-1606), but voting machines are not within the exemption. The proposed

contract in this case involved the rental-purchase of sixty voting machines involving expenditure far in excess of $1,500.00, so there is no question that "Formal Bidding" under § 17-1602 (e) and § 17-1603 (a) would apply in this case.

The record before us sheds no light on why the appellees failed to comply with the rather simple and inexpensive procedure of publication of notice under § 17-1602 (e) (1), and we would be forced outside the record in assuming that appellees considered the county purchasing procedure act nonapplicable to the authority vested in the election commissioners by the terms of the voting machine act.

This argument is not raised in the case at bar, so apparently appellees considered the requirement for publication of notice to be wholly and exclusively for the benefit of prospective bidders and to better insure spirited competition between bidders.  Such may be the primary purpose of § 17-1602 (e) (1) but such notice would also let everyone who had voted for the purchase of the machines know when the bids would be opened so that they could appear if they desired to do so, and at least hear any discussion that might arise as to the "consideration given for price, quality and adaptability to Arkansas ballot requirements" as provided by Ark. Stat. Ann. § 3-1704, supra.

When the County Purchasing Procedure Act was adopted in 1965, the legislature could not have been unaware of the limited source for supply of voting machines.  As was pointed out in *Walsh* v. *Campbell, County Judge,* 240 Ark. 1034, 405 S.W. 2d 264, the constitution of the state of Arkansas was even changed in 1962 (Amendment 50) to permit the purchase of the very machine here involved.  Yet the legislature did not see fit to exempt voting machines from the provisions of the County Purchasing Procedure Act passed in 1965.

Appellees do not contend that voting machines do not come under the provisions of the Purchasing Act, they argue that the Purchasing Act statute was substantially complied with. We are unable to agree that there is substantial compliance when there is no compliance at all. We detect no evidence of fraud or ulterior motive on the part of appellees in their performance of the thankless task thrust upon them by statute in this case, but we conclude that appellees erred in their failure to follow the "Formal Bidding" section of the County Purchasing Procedure Act, Ark. Stat. Ann. § 17-1602 (e) (1), and that the decree of the chancellor should be reversed and this cause remanded with directions to grant appellants' motions, pending appellees' compliance with the provisions of the act.

Reversed and remanded.

GEORGE ROSE SMITH, FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice. I dissent because I feel there has been a substantial compliance with the county purchasing procedure act. See Act 52 of the First Extraordinary Session of 1965. An analysis of this act leads me to the inescapable conclusion that its purpose was to assure competitive bidding in county purchases where the purchase price is $1,000 or more, except for certain commodities which do not include voting machines.

Section 1 makes it unlawful for a county official to make purchases with county funds in excess of $1,-000 unless the method of purchasing set out in the act is followed.

Section 2 of the act is a definition of terms. Among those terms defined are "formal bidding" and "informal bidding."

Section 3 of the act specifies the instances when formal bidding and informal bidding are required and when "open market purchases" are permitted.

Section 4 relates to specifications with relationship to their effect on competitive bidding and authorizes testing and examination of products of the lowest responsible bidder.

Section 5 requires award of contracts to the lowest responsible bidder, and provides for the rejection of bids, and for certain preferences to residents or firms doing business in the county. This section also requires that a purchasing agent file a written statement of the reason for not accepting any low bid.

Section 6 provides for exceptions to procedures for solicitation of bids.

Section 7 provides for maintenance of a list of eligible bidders and requires an effort by any purchasing official to notify any eligible bidder before purchases are made.

Section 8 requires the opening of bids in public at the time and place specified in the notice and authorizes the requirement of a bond to assure performance by a bidder.

Section 9 provides that no contract may be binding without the approval of the county court and the filing of all documents and bids pertaining to solicitation of bids and awarding of contracts.

Section 10 is a saving clause for remedy for breach of contract by a bidder and allows some latitude to purchasing officials with respect to trade-ins.

Section 11 authorizes the purchase of fuels and certain accessories for motor vehicles by counties through the State Purchasing Agent.

Section 12 authorizes the purchasing official to call upon the prosecuting attorney or to employ counsel for

advice and aid in legal matters in connection with purchases.

Section 13 makes an intentional violation of the act punishable by fine and removal from office.

Section 14 is a severability clause.

Section 15 is a general repealing clause.

In this case, the purchasing officials have not deliberately violated the statute. To the contrary, they have substantially complied with it. The County Judge and County Board of Election Commissioners consulted with the Deputy Prosecuting Attorney and arrived at the procedure to be followed after that consultation. The trial court specifically found that bids were received from all voting machine suppliers authorized to do business in the State of Arkansas. The voting machine law restricts purchases to those machines approved by the State Board of Election Commissioners. Ark. Stat. Ann. § 3-1706 (Supp. 1967). Both the trial court and this court can take judicial notice of the fact that only two such machines have been approved by the State Board of Election Commissioners. The suppliers of these machines were notified to submit their bids for opening on a specified date, place and hour.

Under this rather unusual factual situation, I would consider substance above form and say that the contract was valid and in substantial compliance with the act, having accomplished the fundamental purposes thereof. Invalidation of the contract of purchase in this case puts form above substance and makes strict compliance with the act necessary in every circumstance. In my opinion, this makes the application of the statute ritualistic rather than realistic and makes a procedure mandatory in circumstances where it serves no useful purpose or performs no real function.

The purpose of all such statutes is to assure economy in public administration and honesty, fidelity and good morality in public officials and to protect the public against favoritism, improvidence, extravagance, corruption, imposition, fraud, collusion and extortion by promoting actual, honest and effectual competition. 2 Dillon, Municipal Corporations, 1199 § 802; 10 McQuillin, Municipal Corporations, 321 § 29.29; *Dement v. Rokker,* 126 Ill. 174, 19 N.E. 33 (1888); *Gale v. City of St. Paul,* 255 Minn. 108, 96 N.W. 2d 377 (1959); *State v. Toole,* 26 Mont. 22, 66 P. 496, 91 Am. St. R. 386 (1901); *Chippewa Bridge Co. v. City of Durand,* 122 Wis. 85, 99 N.W. 603 (1904); *Reed v. Rockliffe-Gibson Const. Co.,* 25 Okla. 633, 107 P. 168, 138 Am. St. R. 937 (1910); *Silsby Mfg. Co. v. Allentown,* 153 Pa. 319 (1893); *Fonder v. City of South Sioux Falls,* 76 S.D. 31, 71 N.W. 2d 618, 53 ALR 2d 493 (1955); *Cyr v. White,* 83 Cal. App. 2d 22, 187 P. 2d 834 (1947); *Beall v. Board of Supervisors,* 191 Miss. 470, 3 So. 2d 839 (1941); *Miller v. Milford,* 224 Iowa 753, 276 N.W. 826, 114 ALR 1423 (1937); *Fones Bros. Hardware Co. v. Erb,* 54 Ark. 645, 17 S.W. 7, 13 L.R.A. 353. They also afford businessmen and taxpayers of a county a fair opportunity to participate in the benefits flowing from such contracts. *Wester v. Belote,* 103 Fla. 976, 138 So. 721 (1931).

There are well recognized exceptions to the rule that contracts made without advertisement for bids under such statutes are void. One of these exceptions is the case where such advertisement would not result in competitive bidding. *Los Angeles Dredging Co. v. City of Long Beach,* 210 Cal. 348, 291 P. 839, 71 ALR 161; *Harlem Gas Light Co. v. Mayor,* 33 N.Y. 309 (1865); *Hurley Water Co. v. Town of Vaughn,* 115 Wis. 470, 91 N.W. 971 (1902); *Murphy v. Paull,* 192 Wis. 93, 212 N.W. 402 (1927); *Hodgeman v. City of San Diego,* 53 Cal. App. 2d 610, 128 P. 2d 412 (1942); 2 Dillon, Municipal Corporations, 1189 § 802. This exception has been applied to the purchase of voting machines where the same two manufacturers were involved, as they are

involved in this case. *Kingsley* v. *City & County of Denver,* 126 Colo. 194, 247 P. 2d 805 (1952).

Since the only purpose of the statutes is to assure competitive bidding, when this effect is given to them, nothing further is needed. 2 Dillon, Municipal Corporations, 1200 § 802; *Harlem Gas Light Co.* v. *Mayor, supra.*

It has been held that such statutes do not apply where the item to be bought is such that competitive bidding is impractical. *Schwartz & Nagel Tires* v. *Board of Chosen Freeholders,* 6 N.J. Super. 79, 69 A. 2d 885 (1949); *Whelan* v. *New Jersey Power & Light Co.,* 45 N.J. 237, 212 A. 2d 136 (1965). These statutes have been said to have no application unless the contract is naturally competitive. *Layne-Western Co.* v. *Buchanan County,* 85 F. 2d 343 (1936). In the *Whelan* case, the court said that such statutes must be read in the light of the reason for their enactment, lest they be applied where they were not intended to operate and deny authority to deal with problems in a sensible, practical way.

Actually, many of the cases in which competitive bidding or advertisements for bids were held unnecessary, the article or service being contracted for was a patented article or otherwise the subject of a monopoly, so that there could only be one possible supplier. One theory advanced for the exception to the rule is that it would be a useless practice to submit a contract to competitive bidding when it is general knowledge that there are no competing concerns capable of bidding or performing. See Annot., 128 ALR 168. It cannot be said that any offer to contract does not limit itself to those who can perform the contract. *Anderson* v. *Parsley,* 37 S.W. 2d 358 (Tex. CA 1931). The same reasoning and rationale should be applied in a case where there are only two possible suppliers and both are notified and both bid.

The implication of these competitive bidding statutes is that there will be equal opportunity to and freedom in all who might be inclined to bid. *State* v. *Toole,* 26 Mont. 22, 66 P. 496, 91 Am. St. R. 386 (1901).

Under an unusual circumstance such as this, substantial compliance is all that is required. *Anderson* v. *Parsley, supra.* In a case in which a county entered into a contract for rental of voting machines on a bid on terms different from the advertisement for bids, it was held that there was a substantial compliance with the acts requiring competitive bidding. *Hayden* v. *Dallas County,* 143 S.W. 2d 990 (Tex. CA 1940).

The language of the Pennsylvania court sustaining a contract for a patented article, entered into without advertisements for bids in *Silsby Mfg. Co.* v. *Allentown,* 153 Pa. 319, 324, is appropriate here:

"* * * The law does not insist on what is impossible, or absolutely useless. Advertising for proposals in this case would have been worse than useless, since it could have resulted in nothing but dangerous delay and an idle expenditure of money."

I feel that we should say here just what the Florida court said in *Wester* v. *Belote,* 103 Fla. 976, 138 So. 721:

"And so long as the actual proposition *accepted* by the board was one which afforded a reasonable basis upon which all desiring to do so could have bid, or did bid, it cannot be said that the *resultant* award of a contract was so far absolutely void, as to be attacked and enjoined as a matter of course after it was made, at the suit of a citizen and taxpayer, who undertakes to show no resulting damage to himself, except such as may be said to constructively result to taxpayers generally from any substantive violation of the statutes requiring contracts to be let on competitive bids, when such

contracts have been entered into by the board in evasion or fraud of the statutory limitations.'"[1]

I would affirm the decree of the chancery court.

I am authorized to state that GEORGE ROSE SMITH, J., joins in this dissent.

---

[1]The court went on to hold that an injunction would not be granted where there was no fraud, corruption or unfair dealing and there was an honest effort to follow the statute.