TELEPHONE ASSOCIATES, INC., et al., Appellants-Respondents,

v.

ST. LOUIS COUNTY BOARD, et al., Respondents-Petitioners.

No. C6–83–1295.

Supreme Court of Minnesota.

March 8, 1985.

Clay W. Odden, Asst. Co. Atty., Duluth, for respondents-petitioners.

Harry L. Munger, Duluth, for appellants-respondents.

## OPINION

TODD, Justice.

Telephone Associates, Inc. submitted a bid to St. Louis County for installation of phone service. The contract was let to Norstan Communications Systems, Inc. Telephone Associates, claiming it was the lowest possible bidder, sought to enjoin the contract between Norstan and the county. The trial court denied motions for both temporary and permanent injunctions. The court of appeals reversed the trial court. We affirm the reversal of the trial court, but remand with instructions as to what relief is appropriate.

In 1982, construction of a new state office building which was to include space for certain St. Louis County offices was nearing completion in Duluth, Minnesota. At that time the county's purchasing agent contracted with Northwestern Bell for the installation of a phone system at cost of approximately $1,000,000. After Telephone Associates appeared at a county board meeting and objected to the award of the contract without competitive bidding, the contract with Northwestern Bell was rescinded and the county accepted bids for the installation contract.

St. Louis County decided to evaluate the bids on the basis of four criteria: cost, vendor support, system quality, and optional items. Cost constituted 50% of the evaluation decision; vendor support 20%; system quality 20%; and optional items 10%. The cost element included total installation costs plus an estimate of monthly maintenance costs. Telephone Associates submitted a bid of $544,681; Norstan submitted a bid of $544,904. The county then had the bids evaluated by its engineer and purchasing agent in consultation with others experienced in the communication field. In the course of their evaluation, they discovered that Norstan had not responded directly to the bid solicitation form's request for cost of maintenance information. That information was requested as follows:

B. Maintenance contract costs are to be included as specified in section VI, of this RFP. In that hardware and software is to be guaranteed for one year, service costs on lease purchased equipment will not begin until 12 months from acceptance date. Costs indicated should be current maintenance costs. Maintenance costs may not be increased from one year to another more than the percentage

increase in the Consumer Price Index (CPI), or the rates determined by the Public Utilities Commission for regulated entities.

1. If bidder guarantees a lower escalation of maintenance costs during the first five years from acceptance date, indicate this guarantee:

   _____

   _____

   _____

2. Monthly maintenance cost for installed system as costed in following section (XI.C.): $_____.__

3. Indicate the hourly rate for a service/maintenance call for the proposed system: _____

---

Norstan answered question 2: "See Attachment 15d". Attachment 15d provides:

### NORSTAN COMMUNICATIONS SYSTEMS

### MAINTENANCE OPTIONS

After the one year Warranty Period, NORSTAN COMMUNICATIONS SYSTEMS has the following Maintenance Options available:

### "MATERIAL CONTRACT"

This option is based on one percent (1%) of the contract price. This figure represents your annual cost. For example, a $120,000 system times 1% equals $1,200 per year or $100 per month. This option covers all material, but not labor, and also includes scheduled preventative maintenance service calls.

### "TIME AND MATERIALS"

The customer may opt to be serviced on a Time and Materials basis. The charges are portal to portal at existing rates per hour, plus the materials cost. NORSTAN'S current labor rate is $44.00 per hour, subject to increase based on the Consumer Price Index.

Norstan's answer did not provide the information requested since it furnished only the monthly cost of materials, not a fixed monthly rate for both material and labor maintenance costs. Although Norstan's answer included a per hour labor charge, monthly labor costs could not be determined from this figure alone.

Telephone Associates, Inc., answered question 2 with the dollar amount, $1,005. All other bidders, except Norstan, also responded to this question with a fixed dollar amount. The parties who evaluated the bids for the county inserted a dollar amount in Norstan's bid after question 2 when they discovered Norstan's response. They arrived at this figure by averaging the high and low maintenance bids. Nothing in the bid proposal permitted them to do so.

After evaluation, Norstan's bid was recommended to the county board. The board was also moved to accept the low bid of Telephone Associates. The county attorney advised the board, however, that they could not accept the low bid since it had not been recommended by the purchasing agent. The validity of this statement is not before us. The county then awarded the bid to Norstan on May 10, 1982.

On May 17, 1982, Telephone Associates sought a temporary restraining order to prevent the contract award. An agreement was then reached to hold an evidentiary hearing to determine whether a temporary injunction should be issued. Evidence was received on June 4th and June 11th. On June 16, 1982 the trial court denied the request for a temporary injunction. In the memorandum accompanying its order, the

trial court stated that Telephone Associates had not been irreparably harmed. The trial court also concluded that the evaluation process was proper and that it should not substitute its judgment for that of the county. The trial court never specifically addressed the evaluators' insertion of a dollar figure in response to question 2 in the Norstan bid.

On August 24, 1982, Telephone Associates moved to join Norstan as a party to its action and to amend its complaint to seek monetary damages. This motion was never heard or decided. One year later, on August 18, 1983, the original parties appeared in court and stipulated that the motion for a permanent injunction could be decided on the record without further evidence. The court was also advised that the phone system had been installed and was operable on August 20, 1982. On August 19, 1983, the trial court denied the request for a permanent injunction. In the memorandum accompanying its order, the trial court stated that the memorandum explaining its denial of the temporary injunction was adequate to explain its present decision. The trial court also stated that the procedures followed by the county were appropriate and in conformity with the applicable statutes and regulations.

On appeal, the court of appeals reversed the trial court and remanded the case "for such relief as might be proper and appropriate." *Telephone Associates, Inc. v. St. Louis County Bd.,* 350 N.W.2d 398, 402 (Minn.App.1984). We granted the county's petition for further review.

The issues presented are:

1. Whether the bidding procedures employed by St. Louis County were improper?

2. If improper procedures were used, what relief is now available to Telephone Associates?

1. A considerable portion of the evidentiary hearing in this case was devoted to the validity of the county's evaluation process. We agree with the court of appeals that we need not consider this evidence if the county acted improperly when it inserted an estimated monthly maintenance cost in Norstan's bid where none had been supplied.

Normally, an appellate court will respect a trial court's factual determinations. In this case, however, even though the trial court found that the county's bidding procedures were proper, it never specifically addressed the county's completion of Norstan's bid. Therefore, we, like the court of appeals, must consider this issue in light of the record before us.

In *Griswold v. County of Ramsey,* 242 Minn. 529, 65 N.W.2d 647 (1954), we described certain essential features of competitive bidding:

> A fundamental purpose of competitive bidding is to deprive or limit the discretion of contract-making officials in the areas which are susceptible to such abuses as fraud, favoritism, improvidence, and extravagance. Any competitive bidding procedure which defeats this fundamental purpose, even though it be set forth in the initial proposal to all bidders, invalidates the construction contract although subsequent events establish, as in the instant case, that no actual fraud was present. It is for this reason that no material change may be made in any bid after the bids have been received and opened since to permit such change would be to open the door to fraud and collusion.

*Id.* at 536, 65 N.W.2d at 652 (footnote omitted). We also observed that:

> * * * the public welfare is ordinarily best served, in the absence of emergencies, by letting construction contracts to the lowest qualified bidder whereby all competitive contractors are given an equal opportunity and the taxpayers are assured of the best bargain for the least money.

*Id.* at 535–36, 65 N.W.2d at 651 (footnote omitted).

In discussing municipal contract awards, we have said: "Bids for municipal contracts must substantially comply with all requirements relative thereto, as contained in statutes, charter provisions, ordinances,

and advertisements." *Nielsen v. City of St. Paul,* 252 Minn. 12, 17, 88 N.W.2d 853, 857 (1958).

A board may waive bid defects if public rights are not thereby prejudiced. Public officials, however, have no authority to waive defects which affect or destroy competitive bidding. *See e.g.,* 64 Am. Jur.2d Public Works and Contracts, § 62 at p. 916. The test of whether a variance is substantial is "whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." *Duffy v. Village of Princeton,* 240 Minn. 9, 12, 60 N.W.2d 27, 29 (1953).

The county contends that the maintenance information requested was not essential and was desired only for comparison against Northwestern Bell's proposal. Whether actually purchased or not, maintenance costs were used by the county to discriminate between bidders for these costs were included in the cost factor used to evaluate the bids. Since the maintenance figures the bidders actually supplied represented approximately 10% of total costs and since the cost factor constituted 50% of the evaluation decision, maintenance costs had a significance value of roughly 5%. Although this may seem minor, in a sharply competitive bidding situation, contract awards are often determined by slight differences. Therefore, a variance in maintenance costs might have given one bidder an unfair advantage over the others.

Applying the foregoing legal principles to the present facts, we agree with the court of appeals that the county's bidding procedures were improper.[1] Allowing municipal officials to insert an actual dollar amount in place of an incomplete nonresponsive answer in a bid proposal creates an opportunity for fraud and collusion and cannot be tolerated, even when, as here, there is no evidence of fraud or collusion.

2. Having decided that improper bidding procedures were employed, we now must consider what relief is appropriate. This task is difficult because as the dissenting judge at the court of appeals correctly observed:

The general rule is that an unsuccessful bidder is not entitled to damages:

While it is true that an unsuccessful bidder has standing to maintain a proceeding to review the award of a contract in violation of a statute requiring that the contract go to the lowest responsible bidder, this procedure is sanctioned merely to ensure enforcement of the statute.

10 McQuillan, *The Law of Municipal Corporations,* § 29.83 at 426 (3d Ed. 1981) (footnote omitted).

Since the power of letting public contracts must be exercised for the benefit of the public and not of the bidder, it is generally held that an award of a contract to one other than the lowest bidder does not entitle the lowest bidder to a recovery of damages from the municipality, nor to an action to recover profits which he might have made had his bid been accepted ... the rationale underlying this rule is that the authority for letting public contracts is derived for the public benefit and is not intended as a direct benefit to the contractor. Therefore, the misfeasance of public officials in failing to award the contract to the lowest bidder should not be a source of vexation to the public by first requiring unjustified additional expenditure of public funds on the award contract, and then allowing recovery for lost profits to the aggrieved low bidder.

*Id.,* 29.86 at 431. (footnote omitted).

*Telephone Associates,* 350 N.W.2d at 402–03 (Forsberg, J., dissenting).

The phone system is installed and operating. To order its removal now would not be in the public interest. Nevertheless,

---

**1.** Since Norstan is not a party to this action, the effect of this decision as between the county and Norstan is not before us.

proper challenges to the bid-letting process should be encouraged. The efforts of Telephone Associates saved St. Louis County taxpayers almost one-half million dollars. It should not have to bear the expense of its actions, at least during such time as it proceeded diligently. Telephone Associates, however, did not diligently pursue its challenge. To provide an appropriate measure of relief, we adopt the rule set forth in *Owen of Georgia, Inc. v. Shelby County,* 648 F.2d 1084 (6 Cir.1981):

> Owen may recover in promissory estoppel those damages it sustained by reason of its justifiable reliance upon the County's promise—in other words, the expenses it incurred in its unsuccessful participation in the competitive bidding process as well as the costs incurred in its successful attempt to have the award to Pidgeon-Thomas rescinded as having been made in violation of the statute. The initial determination of the amount of damages, however, must rest with the trial court. Accordingly, the case is remanded to the district court to conduct such proceedings as it deems proper for ascertaining the amount of damages which Owen shall receive from the County under the doctrine of promissory estoppel as outlined by this court.

*Id.* at 1096.

Applying *Owen* to the present case, Telephone Associates is entitled to recover the costs incurred in preparing the unsuccessful bid for the installation contract and its expenses, including reasonable attorney fees, from the time it first intervened at the county board to prevent the award of the contract to Northwestern Bell through the filing of its motion on August 24, 1982. It shall not be allowed any costs and expenses beyond that date except the taxable costs allowed in this court as a successful litigant. Loss of profit shall not be considered an expense item.

The relief provided Telephone Associates is not available to the other bidders, who neither made timely challenge to the bid-letting process nor were prejudiced by the award of the bid to Norstan.

Affirmed and remanded to the district court for further proceedings consistent with this opinion.

YETKA, J., took no part in the consideration or decision of this case.