## UNITED TECHNOLOGIES COMMUNICATIONS COMPANY

v.

**WASHINGTON COUNTY BOARD, Artie Schaefer, Donald Scheel, John Jergens, Sally Evert, Joseph Fogerty, as commissioners of the Washington County Board.**

Civ. No. 4–85–1369.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 13, 1985.

Rebecca Palmer and Justin Perl, Maslon, Edelman, Borman & Brand, Minneapolis, Minn., for plaintiffs.

Douglas G. Swenson and Robert Kelly, Washington Co. Atty., Stillwater, Minn., for defendants.

## ORDER

ROSENBAUM, District Judge.

In this case, brought before the Court on the basis of diversity jurisdiction, plaintiff United Technologies Communications Company (United Technologies) complains of defendant Washington County's bid-letting process for a telecommunications system. Plaintiff comes before the Court seeking an injunction 1) preventing the execution and performance of a contract let by bid for the telephone system, 2) requiring Washington County to reject all bids received in its summer, 1985 bid-letting process, and 3) calling for new bids for a telephone system. This Order was first given to the parties by telephone conference on October 23, 1985, at which time the parties were advised that this comprehensive Order would follow. Based upon the motion of the plaintiff, an injunction will issue barring the defendant, Washington County Board, from executing or proceeding under a contract based on the challenged bids.

### I. *Facts*

The dispute before the Court arises from the bidding process used by defendant Washington County to secure a telephone system for its new County Government Center, currently under construction. In this regard, on July 1, 1985, the County circulated an invitation to bid ("Request for Proposals", "RFP", or "solicitation") setting forth proposed specifications for its desired system. The solicitation sought bids on a "base system" and three "options", these options being a computerized message system or "voice mailbox", a microwave system, and an electronic key system. Sealed bids were submitted on August 8, 1985, and were opened and announced on August 9, 1985. At the opening, the County read only the bids on the base system; for that base system, United Technologies' bid was the lowest.

Shortly after the opening, the County narrowed the submissions to three semifinalists, including the one provided by United Technologies. The contract was ultimately awarded to another bidder and semifinalist, International Office Systems ("IOS"), on September 24, 1985. On October 3, 1985, United Technologies applied for a temporary restraining order to prevent the county and IOS from consummating the contract agreement. That motion was denied.

For its motion for preliminary injunction, the company alleges irregularities in the County's bidding process, which include a) variations between the County's solicitation and IOS's proposal, b) the County's use of a subjective system of bid assessment, and c) the fact that the successful bid was not the lowest bid on the base system. Each is asserted as follows:

A. Variations between the County's solicitation and IOS's proposal.

The plaintiff claims there were fatal deviations in IOS's submission for the first option, a computerized message recording system called a "voice mailbox." The County's specifications, couched in "shall" or mandatory language, directed that the system be capable of operating without control. Further, the system was to provide for a digital display of the number of messages stored, and the remaining message capacity of the system.

United Technologies asserts that its proposal complied with the mandatory language and IOS's system did not. Plaintiff claims that IOS's does not comply because its system requires human intervention in order to function and has no digital display of the status of the system.

B. The County's use of a subjective system of bid assessment.

The next of the County's alleged irregularities is the process by which bids were finally rated. This process was conducted by Mr. Frank Greenberg, a consultant hired by the County. Mr. Greenberg's duties apparently included assessing the County's telecommunications needs, drafting the Request for Proposals, narrowing the field of bidders to three semifinalists, and making a final recommendation to the County.

For present purposes, the most significant aspect of Mr. Greenberg's involvement is the "point system" he used in evaluating submissions, a system which was neither suggested nor described in the County's solicitation materials. By affidavit Mr. Greenberg asserts that the point system was divulged in an informational meeting with potential bidders on July 11, 1985. This assertion is controverted by the affidavit of another unsuccessful bidder. Under this point system, Mr. Greenberg assigned point values from 1–10 to eighteen different "factors" which he designated as evaluative items. He then added the eighteen scores, and multiplied the subtotal by another subjective figure from 1–10 based on his assessment several other factors. The multiplicative total thus derived apparently determined his recommendation to the County.

United Technologies claims that this means of evaluating the bids is impermissibly subjective.

C. The successful bid was not the lowest bid on the base system.

On the base system, standing alone, United Technologies' rejected bid was lower than IOS's bid. The difference on the base system was $17,669, or about 5%.

As explained above, the County asked for bids on a base system and on three options. The package of options finally selected by the County was the base system plus options one and three. Of the three semifinalists, United Technologies' bid on the base system was the lowest, but its bid on the base system plus options one and three was the highest; United Technologies' quote was $27,369 higher than the lowest bidder, IOS, on the combined system.

United Technologies claims that the County's consideration of the base system plus options one and three was erroneous.

## II. *Analysis*

An application for a preliminary injunction in the Eighth Circuit must satisfy the four part standard set forth in *Dataphase Systems v. C.L. Systems,* 640 F.2d 109, 114 (1981). In that case, the Court held that:

> [w]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

It is to these factors, and the balance between them in this case that the Court now turns.

### A. Irrevocable harm to the movant

United Technologies asserts that it will suffer three types of harm in the event of denial of its requested injunction. First, the company will be denied the opportunity to participate in a fair bidding process. Second, it will be deprived of the profit it might receive were it to be awarded the contract. Finally, the firm will be deprived of the prestige in the industry which comes from being competitively selected to provide a telephone service of this kind and complexity.

#### 1. Deprivation of the right to participate in a fair bidding process

■ It is imperative that public bidding procedures be conducted in a carefully controlled and wholly open manner. To this end the legislature of the State of Minnesota has constructed and enacted into law a detailed code regulating public bidding procedures. MSA 16B, 375.21. The case law strongly supports these procedures. Even the slightest deviations from prescribed form are viewed with a most jaundiced eye. *Foley Bros., Inc. v. Mar-*

*shall,* 266 Minn. 259, 123 N.W.2d 387, 389 (1963).

The Court is persuaded that the loss of the chance to participate in a fair bidding process raises a significant threat of irreparable injury to the plaintiff. The only true remedy for such injury is to issue the injunction sought by the plaintiff.

#### 2. Lost Profits

Plaintiff claims that a conventional damages suit will not result in an award of the profits it anticipates from a contract with Washington County. Minnesota precedent and fundamental precepts of the law of remedies suggest that this is a plausible contention. In a recent case remarkably similar to that at hand, lost profits were not allowed. *Telephone Associates v. St. Louis County Board,* 364 N.W.2d 378 (Minn.Sup.Ct.1985). There was no injunction in that case and by the time *Telephone Associates* was considered the installation of the system had been completed. The Minnesota Supreme Court found that the bid had been wrongfully rejected but only allowed the bidder to recover its expenses in preparing its bid and reasonable attorney fees. The Court declined to include any lost profits in the award. 364 N.W.2d at 383.

Unlike the situation in *Telephone Associates,* construction in the present case has not yet begun. But future profits are only accessible through speculation. Sound principles limit recovery when the injury is overly speculative. *See,* e.g., D. Dobbs, *Remedies,* section 3.3 at 150–55 (1973). *Nemmers v. City of Dubuque,* 764 F.2d 502 (8th Cir.1985); *Atkins v. Robinson,* 733 F.2d 318 (8th Cir.1984).

The likelihood that United Technologies would profit on a contract with Washington County is, and must be, conjectural. Nevertheless, denying United Technologies its requested injunctive relief will deprive it of the actual opportunity to either profit or lose on its bid. This deprivation, like the opportunity to compete as an equal in a fair competition, can be prevented only by the issuance of an injunction. The plaintiff

might well be unsuccessful in any other or later bidding. The marketplace, and the results of that bidding would then determine its profit or loss.

### 3. United Technologies' loss of prestige

██ United Technologies argues a third type of irremediable injury: the loss of standing in the telecommunications industry which it would receive as the rightful recipient of the Washington County contract. The Court finds this injury to be too speculative to be cognizable for purposes of justifying the issuance of an injunction.

United Technologies by its own admission is a leader in the telecommunications industry and has supplied a number of systems comparable to the one at issue here. If injury exists at all, an assertion requiring a considerable leap of faith, United Technologies' purported loss of face is de minimus and provides no foundation upon which to support the issuance of an injunction.

### B. Balance of harm

As discussed in the previous section, United Technologies has set forth the very real harm of having been unable to participate in a fair bidding procedure. This goes to the very essence of the public bidding process and the public's confidence in that process.

Washington County claims in response that several types of injury will result if the Court grants the requested injunction. The County would incur a loss of time in determining the telephone system it will have in its new building, and may face a potential loss of time in the installation of the system and construction of the building. Washington County also raises the chance that the bids will be higher in a second bidding, and that it may have to pay more for the same system. Finally, the County raises the possibility of a suit against it by IOS, the originally successful bidder.

### 1. Harm to the county from delay

United Technologies is seeking an injunction which could well force the County to initiate a new bidding process for its telephone system. This process would require a new Request for Proposal, the expiration of the statutorily mandated two week period before accepting bids, MSA 375.21, subd. 1, analysis of those bids, selection of one, and at least some time for the successful company to prepare the system.

The extent of this delay is uncertain, as is the amount of the additional expense a second bidding may generate. Regardless, it must be acknowledged that some delay in determining which telephone system will be installed will necessarily result from the issuance of an injunction. Although the impact on the overall construction schedule of a delay in the readiness of the telephone system is unclear, any delay introduces uncertainty. The County planners will be deprived of knowledge of their new telephone facilities, and this injury is real if not overwhelming.

On the other hand, though information was requested by the Court at both the oral argument for a temporary and for a preliminary injunction, the parties have provided no evidence that the delay in selecting a system will have an impact on either the construction schedule for the building or its date of readiness. No evidence has been provided suggesting that a later telephone installation would create structural complications which would delay completion of the building. In the total absence of evidence of serious physical and financial consequences, the principal burden imposed by delay remains the simple uncertainty of the system eventually to be installed.

### 2. The possibility of a higher bid

The County raised at argument the possibility that undergoing a new bidding process will subject it to a risk that higher bids will be submitted the second time around, and that the County will be forced to pay more for the same equipment.

The Court points out that if those sections of the bid solicitation which are couched in the mandatory ("shall") language are inflexibly adhered to, the bids may, in fact, be higher, since arguably more rigid and onerous limitations may thereby be placed on the bidders. But the flexibility which has resulted up to now from the county's haphazard waiver of these mandatory provisions is a major reason why the bidding process is asserted to be unfair.

On the other hand, it is possible that the bids in a second bidding may be lower. All of the bids on the base system were announced on August 9, 1985. It is possible that one effect of these disclosures is to designate a "ball park" figure to potential bidders on the new solicitation. Under these circumstances there is an equally strong possibility that the bid submissions will be lower.

The possibility that the County will be hurt in the process of a new bid procedure is therefore uncertain and subject to factors some of which are within the County's capacity to control. This potential source of harm, like the harm resulting from delay, may exist, but cannot be persuasive as to whether or not an injunction should issue.

### 3. Suit by the successful bidder

Finally, Washington County raises the possibility that IOS will file suit against it should an injunction issue. While this threat exists, as seen below, it cannot be a factor in the Court's decision.

█ It is a general principle of the law of contracts that one is not liable in an action for breach where that breach was the result of a court order. *See, e.g., Village of Minneota v. Fairbanks, Morse & Co.*, 226 Minn. 1, 31 N.W.2d 920, 925–26 (1948). This notion is akin to the impossibility defense to breach of contract actions. *Id.* It has further been observed that, as a general principle, the rules determining excuses for nonperformance apply within the context of government contracts. 10 McQuillan, *The Law of Municipal Corporations*, section 29.119 at 540 (3d ed. 1981). An exception to this defense exists, however: An action for breach may lie where performance is prevented by a judicial decree or order and that order was the result of the defendant's own negligence or breach of duty. 6 A. Corbin, *Corbin on Contracts*, section 1346 at 430 (1960 & Supp.1984). But this potential liability does not aid the County's position.

The flaw in the County's argument is that it would stand equity on its head. Consider: If United Technologies is to prevail it is because the County has erred in its procedures. Such error may subject the County to injury by suit. The threat of this suit mitigates against injunction and in favor of the County. Therefore the County's injustice is to be considered in its favor in this cause.

The Court declines to reach the perverse result that the County's wrongful actions, if any existed, should inure to its benefit by protecting it from an otherwise justified injunction. Any injury resulting to the County from a breach of contract action by IOS will therefore not impede the issuance of an injunction in this case.

The harms to the County cognizable for injunctive analysis therefore consist of a) its loss of time in determining the ultimately successful system and the attendant inconvenience and uncertainty, b) a possible but unresolved delay in the construction schedule, and c) an uncertain risk that the bids and the system cost will be higher the second time around. These tenuous injuries are weighed in the balance against the irreparable harm to United Technologies of being deprived of a fair competition against equals, and its chance to succeed or fail in an open and unbiased marketplace. The Court finds that the harm to the County generated by an injunction is decisively outweighed by the harm United Technologies will incur if an injunction does not issue. The first two factors of the *Dataphase* analysis therefore support the issuance of an injunction in this case.

### C. Likelihood of success on the merits

The specifics of the facts complained of by United Technologies are set forth in detail above. United Technologies objects to: 1) the deviation of IOS's successful bid from the specifications of the County's solicitation, 2) the subjective point system used by the County in evaluating bids, and 3) the County's acceptance of a bid which exceeded other bids on the base system. An analysis of United Technologies' chances of success on the merits must consider each of these allegations.

#### 1. IOS's deviation from the specifications of the County's invitation to bid

United Technologies bases its application for injunctive relief in part on the set of departures in IOS's successful bid from the specifications of the County's solicitation. The principal focus of the company's concern is the first option, the computerized voice mailbox system. The specifications listed by the County call for a system which will operate without control, and which will have a digital display showing the status of the system.

> The successful bidder shall provide a state of the art, computerized phone message system, internal or peripheral to the PBX system. This system *shall* operate without control and *shall* function in the following manner.
>
>    \*    \*    \*    \*    \*    \*
>
> n. The control computer *shall* be equipped with a digital display which displays the number of messages stored, remaining storage capacity of the system and number of mail box assignments in use and available.

Request for Proposals, Option 1, paragraph 6.01 (emphasis added).

A plain reading makes it clear that these provisions are not themselves optional.

United Technologies claims that IOS's voice mailbox submission does not meet these requirements, first in that it does not operate without control, since an operator must activate the mailbox system and turn off the light that indicates that an individual has messages, and second that it lacks a digital display. It is United Technologies' contention that these deviations render the underlying contract void.

Caselaw in Minnesota is consistent in its disdain for government contracts formed on a substantial or material deviation from the specifications. *See,* e.g., *Coller v. City of St. Paul,* 223 Minn. 376, 26 N.W.2d 835, 840 (1947). The test for what constitutes a material or substantial deviation is whether the successful bidder received a substantial advantage or benefit. *Id.*

While the evidence presently before the Court on the question of the magnitude of IOS's deviation is incomplete, the fact of the deviation is certain; there is no digital display. There is no dispute that this is a deviation from the specifications, a deviation rendering the IOS system not in compliance with the invitation to bid. In the absence of conclusive evidence demonstrating that these deviations are or are not material, this Court is unprepared to venture an opinion. Nevertheless, the first component of an action for impermissible deviation, actual variance from specifications, is conclusively presented here.

To the element of variance from specifications, United Technologies adds allegations that IOS materially benefited from the deviation in that the system presented by IOS is cheaper to build. Waiving such a provision, then, benefited IOS and ran afoul of settled case law. *Telephone Associates v. St. Louis County Bd.,* 364 N.W.2d 378, 382 (Minn.Sup.Ct.1985), *Duffy v. Village of Princeton,* 240 Minn. 9, 60 N.W.2d 27, 29 (1953). United Technologies claims that had it, too, been relieved of the display requirement it could have beaten IOS's bid. United Technologies' chances for success on the merits of this point thus appear good, and provide further support for the issuance of an injunction.

#### 2. Washington County's evaluation of bids

United Technologies objects to the high degree of subjectivity present in the County's decision-making process. In addition,

it avers that the bidders received no notice of either the fact nor the specifics of that evaluation system. Based on the evidence currently before the Court, United Technologies' chances for success on the merits of these claims appear good.

The Company's prospects are influenced by the standard of review. Courts, acting under the guidance of legislatures, are generally reluctant to second guess the substance of administrative decisions and decision-making processes. *See,* e.g., M.S.A. 14.69(f), calling for reversal when determinations are arbitrary and capricious, and *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977). As a result, United Technologies will only succeed on the merits of its objections if it demonstrates that the County abused its discretion in its assessment system.

a. Subjectivity

Under the standard of review discussed above, the Court is reluctant to enter into a detailed assessment of the specific criteria used by the County. Several observations with respect to success on the merits can nevertheless be made. First, the subjectivity of the County's assessment is extreme. As set forth above, the evaluation rated eighteen factors, added the ratings and multiplied that sum by yet another subjective factor. The resulting sum was said to underlie the County's decision.

The Court is not instinctively offended by the presence of some subjectivity when a governmental agency selects sophisticated and expensive equipment. Nevertheless, as Washington County's process has been presented to the Court, it is difficult to conceive of a more subjective assessment process. The Court is aware of no cases holding that extreme subjectivity either can or cannot support a finding that discretion has been abused, but if subjectivity can violate the relevant standard of review such a violation is reasonably likely here.

b. Lack of notice

A decision on the merits will also have to consider United Technologies' allegation that bidders did not receive notice of the County's assessment scheme. Regardless of whether any statement about a subjective test was made at the pre-bid meeting of July 11, 1985, it is uncontroverted that no written notice was provided, and there was no comprehensive description of the specific factors to be used in the County's bid assessment.

Elemental fairness requires that bidders be entitled to notice of the bases upon which their bids will be evaluated. This is particularly true when the basis for decision making varies from a search for the "lowest responsible bidder" of MSA 16.B and 375.21. Even under a standard of review attaching liability only to arbitrary and capricious conduct, the County's failure to give notice undermines the integrity of the entire bidding system. Here, success on the merits seems likely.

Plaintiff's probability of success on the merits in these allegations, combined with IOS's acknowledged deviation from the terms of the bid proposal, supports the issuance of an injunction.

3. Washington County's acceptance of a bid that was not the lowest of those received on the base system.

As is more fully described above, Washington County sought quotes on four separate types of equipment: a base system and three enhancements, termed "options." At no time did the County indicate the possibility that if the lowest bid on the base system was not the lowest bid including selected options, the lowest bid including those options might be selected over the lowest bid on the base system.

In the present case, at the August 9, 1985, bid opening, only the bids on the base system were read. United Technologies submitted the lowest bid on that base system—over $17,000 lower than IOS's successful bid. In spite of these quotes, a contract for the base system and two options was awarded to IOS, which submitted the lowest bid on that parcel of goods.

The underlying issue again concerns notice to the parties and the fundamental integrity of the public bidding process. The County failed to communicate the possibility that it would proceed as it did, allowing the lowest bid on options to override the lowest bid on the base system. In the presence of prospects of success on the merits that already appear good, the Court need not delve deeply into the severity of this lack of notice. It stands at the very least as another potential basis for recovery, and combines with the other two bases discussed above to yield the conclusion that the third variable of the *Dataphase* calculus, chances for success, decidedly supports the issuance of injunctive relief in this case.

### D. The public interest

Several facets of the public interest reflect on this case. The Minnesota Supreme Court recently declared a policy of favoring legitimate challenges to the public bidding process in the case of *Telephone Associates v. St. Louis County Bd.*, 364 N.W.2d 378, 383 (Minn.1985). To this interest must be added the more general public interest in governmental compliance with the statutory regime of the public bid setting. In opposition, the County raises the efficiency-related need of public officials to perform their appointed tasks free of the shackles of inappropriately intrusive scrutiny.

The Court finds its strongest guidance in discerning the public interest in the *Telephone Associates* case. That case, like this one, dealt with alleged irregularities in a county's bid letting for a telephone system. The situation under scrutiny in *Telephone Associates* raised the same conflicting policy issues as those raised here, specifically the conflict between the need for bureaucratic efficiency and the standards designed to insure the integrity of the public bidding process. The Court there stated that:

> [t]he phone system is installed and operating. To order its removal now would not be in the public interest. Neverthe-

less, *proper challenges to the bid letting process should be encouraged.*

*Id.* (emphasis added).

This declaration is not binding on this Court as precedent, but it nevertheless constitutes a clear statement of enunciated public policy in Minnesota. Compliance with the Supreme Court's established policy therefore supports the issuance of an injunction.

Further policy support for the injunction issued here lies in Minnesota's statutory scheme of requirements for public bid-letting. MSA 16B.06, *et seq.*, provides an extensive regime of requirements for public bids, including established decision-making priorities (16B.09, subd. 1), review and audit mechanisms (16B.06, subd. 1, 4), notice provisions and timetables (16B.07, subd. 3), and the bid management and opening provisions (*Id.*). Many of these requirements are mirrored and specifically applied to county boards by MSA 375.21. This extensive statutory regulation of the process by which public contracts are awarded both protects the integrity of that process and indicates that integrity is a high public priority. The level of detail further suggests that this priority outweighs the efficiency that might be gained by use of a more flexible, less detailed, process.

This Court is here presented with clear indications of policy from Minnesota's second and third branches of government. Both espouse a public interest that values integrity in public bidding highly. In the face of these declarations, this Court finds that the public interest, like each of the other factors in the *Dataphase* analysis, supports injunctive relief in this case.

### III. *Conclusion*

The application of the four-part injunctive analysis to the present case yields the conclusions that 1) United Technologies will be irreparably injured if an injunction does not issue, 2) this injury is not offset by the injury which will result to Washington County from an injunction, 3) United Technologies' chances for success on the

merits appear good in light of the evidence currently before the Court, and 4) the public interest favors the imposition of injunctive relief.

For the reasons stated above, IT IS ORDERED that:

1. The Washington County Board is prohibited from signing or performing a contract and from otherwise proceeding on the bids for a telephone system requested by it on July 1, 1985 and opened on August 9, 1985;

2. This injunction is to be effective upon the filing by plaintiff United Technologies of a bond in the amount of $55,000;

3. The Court reserves the possibility of further proceedings regarding the bond upon appropriate motion by either party.