LOVERING–JOHNSON, INC., Appellant,

v.

CITY OF PRIOR LAKE, Respondent.

No. C6–96–1331.

Court of Appeals of Minnesota.

Jan. 14, 1997.

500

Dean B. Thomson, Jocelyn L. Knoll, Fabyanske, Svoboda, Westra & Hart, P.A., Minneapolis, for Appellant.

Roger N. Knutson, Andrea M. Poehler, Campbell, Knutson, Scott & Fuchs, P.A., Eagan, for Respondent.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Respondent City of Prior Lake awarded a contract to Rochon Corporation for construction of a maintenance and storage facility. Appellant Lovering–Johnson, Inc. (LJI), a competing bidder on the project, sought a temporary restraining order, claiming that it was the lowest responsible bidder. The district court denied the restraining order, and subsequently LJI sought reimbursement for its bid preparation costs pursuant to Minn. Stat. § 471.345, subd. 14 (1996). On cross-motions for summary judgment, the district court denied both parties' motions. After a bench trial, the district court ordered judgment for the city dismissing with prejudice LJI's claim. We reverse and remand with directions to the district court.

## FACTS

The parties submitted this case on stipulated facts, which were adopted by the district court. On August 8, 1995, the city circulated an invitation for bids for a contract to construct a maintenance and storage facility (Project). The bid instructions contained the following provision:

> The [city] shall have the right to waive informalities or irregularities in a Bid received and to accept the Bid which, in the [city's] judgment, is in the [city's] own best interest.

The bid form required contractors to provide a base bid and eleven alternate bids, written in both words and numbers. The alternates allowed the city to select more or less work and remain within the Project's budget. The city anticipated that alternates 1 through 4 would be "add" and alternates 5 through 11 would be "deduct"; the pre-printed form labeled the alternates as such.

LJI, Rochon, and twelve other contractors submitted bids. On September 8, 1995, the city's architect, Jeffrey Oertel, opened and read the bids at a public bid-opening session. Rochon's bid form had plus signs written in front of the words and numbers for alternates 9, 10 and 11, although the form labeled these alternates as "deduct." Oertel read Rochon's bid for alternate 11 (the only alter-nate at issue) as a positive number, that is, plus $21,500. After reading Rochon's bid, Oertel heard Rochon's representative, Luann Sawochka, groan and shake her head. After reading all the bids, Sawochka approached Oertel and informed him that Rochon intended alternate 11 to be a deduct.

Three days later, Rochon's project manager, Jeff Wellman, called Oertel to explain that Rochon intended to bid alternate 11 as a deduct. Wellman sent Oertel a letter enclosing Rochon's bid worksheet for alternate 11 and the bid from its subcontractor. Wellman informed Oertel that the "+$21,500" written on Rochon's alternate 11 bid was the result of human error. Based on this information, Oertel told Wellman that it was apparent to him that Rochon intended alternate 11 to be "−$21,500" rather than "+$21,500."

Oertel and other city employees reviewed Rochon's materials and claim of human error. The city decided it would accept Rochon's explanation, waive the mistake as a clerical error, and allow Rochon to change alternate 11 by omitting the plus signs, thereby leaving Rochon's bid a "deduct," as pre-printed on the bid form. This change lowered Rochon's total bid from $2,625,601 to $2,582,601. With LJI's bid at $2,589,700, Rochon's modified bid displaced LJI as the lowest bidder by approximately $7,000. Despite protests from LJI, the city council voted to award the Project contract to Rochon.

Subsequently, LJI sought injunctive relief, which was denied. Following completion of the Project, LJI filed an amended complaint seeking a declaratory judgment that the city was obligated to reimburse LJI for all of its bid preparation costs pursuant to Minn.Stat. § 471.345, subd. 14. LJI sought reimbursement of the cost of preparing its unsuccessful bid, including the time spent by its principal, Robert Johnson, estimators, and clerical staff. In determining its costs incurred, LJI multiplied its employees' hourly rates by three to cover direct personnel and other overhead expenses. LJI claimed approximately $11,000 in bid preparation costs.

Following a bench trial, the district court ordered judgment for the city, dismissed LJI's claim with prejudice, and denied a

damage award. The district court concluded that the city did not violate Minnesota's competitive bidding law because Rochon's bid for alternate 11 was a minor clerical error or irregularity that the city was permitted to waive, as provided in the bid instructions. In the event it was reversed on appeal, the district court also found that LJI's preparation costs for the unsuccessful bid were $2,169. This appeal followed.

## ISSUES

1. Did the district court err in concluding that Rochon's bid for alternate 11 was a minor clerical error that the city could waive?

2. Was the district court's finding that LJI's bid preparation costs were $2,169 clearly erroneous?

## ANALYSIS

■ On appeal from a declaratory judgment, we apply a clearly erroneous standard to factual findings, but review de novo the district court's determination of questions of law. *Rice Lake Contracting Corp. v. Rust Env't & Infrastructure, Inc.,* 549 N.W.2d 96, 98–99 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996). Where the material facts are undisputed, as here, we need not defer to the district court's application of the law. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

1. LJI challenges the dismissal of its claim that the city violated Minnesota's competitive bidding laws in letting the Project's construction contract. Specifically, LJI contends the city had no authority to change Rochon's alternate 11 bid after it had been opened because the modification affected price, thereby constituting a material and substantive change. We agree.

■ The supreme court has described the essential nature of the competitive bidding process for public contracts:

A fundamental purpose of competitive bidding is to deprive or limit the discretion of contract-making officials in the areas which are susceptible to such abuses as fraud, favoritism, improvidence, and extravagance. Any competitive bidding procedure which defeats this fundamental

purpose, even though it be set forth in the initial proposal to all bidders, invalidates the construction contract although subsequent events establish * * * that no actual fraud was present. *It is for this reason that no material change may be made in any bid after the bids have been received and opened since to permit such change would be to open the door to fraud and collusion.*

*Griswold v. County of Ramsey,* 242 Minn. 529, 536, 65 N.W.2d 647, 652 (1954) (emphasis added) (footnote omitted); *see also Telephone Assocs. v. St. Louis County Bd.,* 364 N.W.2d 378, 381 (Minn.1985) (citing *Griswold,* 242 Minn. at 536, 65 N.W.2d at 652 (footnote omitted)).

■ Accordingly, the supreme court has held that a public agency must determine bid responsiveness at the time the bid is opened. *Carl Bolander & Sons Co. v. City of Minneapolis,* 451 N.W.2d 204, 206 (Minn.1990). Once a bid has been opened, the public entity has no authority to make any *material* changes or modifications to the bid. *Id.; Coller v. City of St. Paul,* 223 Minn. 376, 387, 26 N.W.2d 835, 841 (1947). The rule prohibiting material changes once a bid has been opened applies despite provisions in the bid instructions that allow the public entity to waive irregularities. *See Griswold,* 242 Minn. at 536, 65 N.W.2d at 652 (stating that bidding procedures that defeat the fundamental purpose of competitive bidding, even if set forth in the initial proposal to all bidders, cannot be allowed).

■ Thus, the issue becomes whether a change or modification to the bid is "substantial or material." The test for determining whether a change or variance is material is whether the change gives a bidder a substantial advantage or benefit not enjoyed by other bidders. *Bolander,* 451 N.W.2d at 207 (quoting *Coller,* 223 Minn. at 385, 26 N.W.2d at 840); *Telephone Assocs.,* 364 N.W.2d at 382 (quoting *Duffy v. Village of Princeton,* 240 Minn. 9, 12, 60 N.W.2d 27, 29 (1953)). In the instant case, we conclude that the city materially modified Rochon's alternate 11 bid by ignoring the plus signs after it had been read as "+$21,500." Once Oertel read the

bids, Rochon had a substantial advantage over its competitors because Rochon knew the bid of the lowest responsible bidder. As a result, Rochon was in a position to become the lowest bidder by lowering its bid to the "intended" price. Based on Rochon's certain knowledge of the lowest bid after bid opening, we believe Rochon had an impermissible unfair advantage over the other bidders.

■ Here, there is no finding that Rochon had a fraudulent purpose. Notwithstanding, the courts are obliged to scrupulously guard the competitive bidding process to protect against the possibility of such fraud. *See Telephone Assocs.*, 364 N.W.2d at 382 (holding that mere creation of an opportunity for fraud and collusion cannot be tolerated even when there is no evidence of it); *Coller*, 223 Minn. at 389, 26 N.W.2d at 842 (noting that although there was no evidence of fraud or wrongdoing, it was unnecessary to make such a showing). Accordingly, the district court's conclusion that "there is absolutely no evidence of fraud or collusion in this matter" is not controlling.

■ Moreover, the supreme court has stated that price, or "other things that go into the actual determination of the amount of the bid," are all matters "involving the substance of a competitive bid." *Foley Bros. v. Marshall*, 266 Minn. 259, 263, 123 N.W.2d 387, 390 (1963). The city's change affected Rochon's price for alternate 11, thereby affecting its total bid. Under *Foley*, modifications in price affecting a bid's amount are deemed material. Caselaw also indicates that price modifications are especially relevant where, as here, the competing bids are close and the bidding is highly competitive. *See Telephone Assocs.*, 364 N.W.2d at 382 (explaining that although a change in costs may seem minor, "in a sharply competitive bidding situation, contract awards are often determined by slight differences"). Consequently, we conclude that the city's actions

resulted in a material change after Rochon's bid was opened.[1]

We are particularly concerned by these unique circumstances because, at the time of bid opening, Rochon's alternate 11 was ambiguous on its face. The Project architect, Oertel, read Rochon's alternate 11 bid as an add, and Rochon convinced Oertel after bid opening that it intended to bid the alternate as a deduct. Although Oertel stated it was apparent to him that Rochon intended its bid to be a deduct, this only came to light following an inquiry after bid opening. It is precisely this type of inquiry or supplementation of a bid after bids have been opened that undermines the competitive bidding process.

■ The city argues that a knowledgeable engineer or contractor would know that alternate 11 could only be a deduct. In the absence of evidence to the contrary, however, we are bound, as was the district court, by the parties' stipulated facts. *See Lappinen v. Union Ore Co.*, 224 Minn. 395, 407, 29 N.W.2d 8, 17 (1947) (holding that as long as a stipulation remains in effect, it is binding not only on the parties, but on both the district and appellate courts). The stipulation, adopted by the district court as its findings of fact, provided:

> The parties agree that in the construction industry, depending on the circumstances, alternates are *sometimes* bid differently than what the public authority anticipates, i.e., sometimes bidders intentionally bid add alternates as deducts and deduct alternates [as] adds.

(Emphasis supplied). We accordingly conclude that Rochon's bid on alternate 11 was facially ambiguous and gave rise to an inquiry and modification of a material term after bid opening in violation of Minnesota' competitive bidding laws.

2. LJI also challenges the district court finding that LJI's bid preparation costs were $2,169, claiming that this finding was not supported by the evidence and clearly erro-

---

**1.** The city contends minor irregularities in bids do not justify bid rejection because the city has an overriding responsibility to award a contract to the lowest bidder if public rights are not thereby prejudiced. The city relies on *Madsen–Johnson Corp. v. City of Becker*, No. C1–95–1713,

1996 WL 106192 (Minn.App. Mar.12, 1996) and *J.L. Manta, Inc. v. Braun*, 393 N.W.2d 490, 491 (Minn.1986). These cases, however, are inapposite because they dealt with minor bid irregularities that did not affect the substance of the bid.

neous. LJI contends that the district court failed to take into account evidence on Robert Johnson's time in preparing the unsuccessful bid. Additionally, LJI argues that the district court ignored the unrebutted testimony that multiplying LJI's employees' hourly rates by three established an accurate and reasonable estimate of LJI's actual costs, including the cost of employee benefits and FICA expenses.

Minnesota's competitive bidding laws permit an unsuccessful low bidder who successfully challenges a municipal contract to recover costs incurred in preparing its bid. Minn.Stat. § 471.345, subd. 14. This section provides:

> In any action brought challenging the validity of a municipal contract under this section, the court shall not award, as any part of its judgment, damages, or attorney's fees, but may award an unsuccessful bidder the costs of preparing an unsuccessful bid.

*Id.*

■ First, LJI argues that the district court ignored Johnson's bid preparation time in determining bid preparation costs. The district court disallowed that portion of LJI's claimed costs attributable to Johnson ($4,500) reasoning that his income was based on profit and any costs allowed for him would represent profit to the company. Johnson, however, only mentioned LJI's profit in his testimony to describe how he computed his hourly rate. Johnson explained that by dividing his salary (established by company profit), by the number of hours he worked he could arrive at his hourly rate. The district court possibly confused Johnson's hourly rate calculations with LJI's anticipated profit. The district court's finding fails to account for the time spent by Johnson in bid preparation, and thereby does not recognize a cost incurred by LJI. Acknowledging and compensating LJI for Johnson's time does not constitute an award of profit to LJI. Therefore, the district

court erroneously ignored the cost of Johnson's time in preparing LJI's bid.

■ Second, LJI asserts that the district court erroneously disregarded the multiplier of three it used to account for its actual cost including overhead, employee benefits, and taxes. The district court found:

> 52. The costs also include $2,500.00 for the chief estimator, $3,260.00 for the other estimators, and $720.00 for clerical help. In calculating these rate[s] the Plaintiff used a multiplier of three on the hourly rates charged for his employees. This multiplier is used by the Plaintiff to reflect direct payroll costs, such as unemployment insurance, FICA, and health insurance. *Mr. Johnson stated that the multiplier was a guess on his part and there was no explanation as to how this multiplier relates to the actual cost of preparing the bid.* Since an unsuccessful bidder is only permitted the actual costs for the bid the multiplier cannot be used in estimating the cost.

(Emphasis supplied). "Generally an appellate court will not interfere with a damage award unless failure to do so would be shocking and result in injustice." *Prichard Bros. v. Grady Co.,* 436 N.W.2d 460, 467 (Minn. App.1989) (quoting *Anderson v. Blair,* 358 N.W.2d 708, 712 (Minn.App.1984)), *review denied* (Minn. May 2, 1989). Since there is evidence that the multiplier is speculative, we conclude the district court did not err in refusing to recognize the multiplier urged by LJI to cover its personnel and overhead costs.

■ We conclude that the evidence supports an award to LJI of $3,660 constituting amounts recoverable by LJI pursuant to Minn.Stat. § 471.345, subd. 14.[2] We reverse and remand to the district court with instructions to order judgment for LJI in the aforesaid amount plus costs and disbursements pursuant to law.

---

**2.** In arriving at this figure, we recognize the cost of Johnson's time and the district court's specific findings on the costs associated with the other employees, but do not use the multiplier claimed by LJI: $4,500 (Johnson as LJI's principal) + $2,500 (chief estimator) + $3,260 (other estimators) + $720 (clerical) / 3 = $3,660.

## DECISION

The modification of Rochon's alternate 11 bid from an add to a deduct after the bids were opened is a material change that violates Minnesota's competitive bidding laws. As the displaced bidder, LJI is entitled to its bid preparation costs in the amount of $3,660.

**Reversed and remanded.**