**ROCHON CORP., Appellant,**

v.

**CITY OF SAINT PAUL, Respondent.**

**No. A11–1271.**

Court of Appeals of Minnesota.

May 7, 2012.

Dean B. Thomson, Jeffrey A. Wieland, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for appellant.

Sara R. Grewing, St. Paul City Attorney, Lawrence J. Hayes, Jr., Assistant City Attorney, St. Paul, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; PETERSON, Judge; and HALBROOKS, Judge.

## OPINION

ROSS, Judge.

Rochon Corporation lost the municipal general-contract bidding contest to construct the Lofts at Farmer's Market for the City of St. Paul to Shaw–Lundquist Associates. When the city opened the sealed bids, Shaw–Lundquist appeared to be the clear winner. But Shaw–Lundquist discovered that it had bid $619,200 lower than it had intended due to a clerical error, and the city allowed Shaw–Lundquist to change its bid, raising it to cover not only the $619,200 error but adding $89,211 more. Still, Shaw–Lundquist's raised bid was lower than Rochon's bid, and the city awarded Shaw–Lundquist the contract for $8,041,411. Rochon sued for the district court to void Shaw–Lundquist's contract with the city. The district court granted Rochon's summary judgment motion in part and denied it in part. It declared that the city had violated competitive bidding laws by permitting Shaw–Lundquist to change its bid after the bids were opened, but it held that the change was not material. It therefore declined to declare the contract void but awarded Rochon its $33,652 costs for its work preparing its bid. Rochon appeals, arguing that the district court erred by not declaring that the change was material and that the contract is void. Because Shaw–Lundquist's bid change was material, we reverse.

## FACTS

The city of St. Paul solicited bids in November 2010 for a construction project, the Lofts at Farmer's Market. The city announced that the bid budget was $7.5 million. The bid instructions warned, "A bid may not be modified, withdrawn, or canceled by the Bidder for a period of sixty (60) days following the time and date designated for the receipt of bids, and each Bidder so agrees in submitting a bid."

On November 22, 2010, the city received and opened six bids at a public bid opening. The results were as follows:

| Bidder | Lump Sum Bid Amount |
| --- | --- |
| Shaw–Lundquist Associates, Inc. | $7,333,000.00 |
| Doran Construction | $8,298,000.00 |
| Sand Companies, Inc. | $8,394,983.00 |
| Rochon Corporation | $8,725,000.00 |
| Stahl Construction Co. | $8,900,000.00 |
| Morcon Construction Co., Inc. | $9,652,568.00 |

Shaw–Lundquist was the lowest bidder. The city disqualified the two next closest bids—from Doran Construction and Sand Companies—as nonresponsive because they failed to include a required form stating that they would include the partic-

ipation of women- and minority-owned subcontractor businesses. The double disqualification put Rochon's bid ·in second place.

The day after the bid opening, Shaw–Lundquist informed the city by an electronically transmitted letter that it was withdrawing its bid because it had "discovered a mathematical error in [its] bid spreadsheet." It stated that "[Shaw–Lundquist's] correct bid total should be $8,041,411." The error was a transcription mistake creating a disparity between a subcontractor's bid and Shaw–Lundquist's bid spreadsheet; instead of the correct amount of $688,000 for that subcontract cost, Shaw–Lundquist had mistakenly indicated only "$68,800." The mistake rendered Shaw–Lundquist's bid $619,200 lower than its bid would have been with the correct costs included.

The city considered how to treat the mistake. It first decided not to hold Shaw–Lundquist to its bid or to proceed against its bid bond. That much was not controversial. The dispute arose from the city's next action. It asked Shaw–Lundquist if it would maintain its bid if it were permitted to correct the transcription error. This seemed beneficial to the city since, even with the error corrected, the Shaw–Lundquist bid was still the lowest, with the next bid, Rochon's, higher than the project's budget. Shaw–Lundquist agreed that it would replace its bid with one for $8,041,411. The record does not indicate the city's rationale for allowing not only the error correction but also the additional $89,211 in Shaw–Lundquist's replacement bid, but it accepted the modified bid and awarded Shaw–Lundquist the contract.

Rochon, Morcon Construction Company, and Doran Construction protested the contract and demanded that the city either hold Shaw–Lundquist to its original bid or reject the bids altogether for a rebid. The city denied the request, recognizing that a delay would affect funding for the project and calculating that it could cost the city about $43,000 a month in interest.

Rochon commenced this lawsuit on its own behalf and under the private attorney general statute. It moved for a temporary restraining order or for a temporary injunction. It also asked the district court to declare the challenged contract illegal and void, and to order the city to reimburse its costs incurred in preparing its bid. The district court denied Rochon's motion for temporary relief. Three days later, the city authorized Shaw–Lundquist to begin construction.

Rochon moved for summary judgment on its declaratory relief claim alleging that the city had violated public procurement law by permitting Shaw–Lundquist to make a material change to its bid after the public opening. The district court declared that by allowing Shaw–Lundquist to modify its bid the city had violated St. Paul Ordinances Chapter 82, section 82.02 (Code of Ordinances, Part III, Title IV, Chapter 82, section 82.02) (2010), Minnesota Statutes section 471.345, subdivision 3 (2010), and its own bidding instructions. But the district court held that the change was not material because Shaw–Lundquist did not enjoy a substantial advantage over the other bidders because it was still the lowest bidder after the changes. It declined to declare the contract void. The district court awarded Rochon its bid preparation costs of $33,652.

Rochon appeals.

## ISSUE

Did the district court err by concluding that Shaw–Lundquist's change to its bid was not material and that the contract

between Shaw–Lundquist and the city of St. Paul is not void?

## ANALYSIS

Rochon appeals from the partial denial of its motion for summary judgment. Our review is de novo. On an appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erroneously applied the law. *Prior Lake Am. v. Mader,* 642 N.W.2d 729, 735 (Minn.2002). The parties agree that no genuine issues of material facts exist, so our review is limited to whether the district court erred in its application of the law to the facts. *See id.* We first consider whether the change was "material" and then whether the change requires the contract to be voided.

*Material Change?*

■ Rochon correctly argues that the district court erred by concluding that, although the city violated competitive bidding laws, the change it allowed in Shaw–Lundquist's bid was not material because it remained the lowest nondisqualified bid. Both the Minnesota Statutes and St. Paul's ordinances required competitive bidding for the Lofts project due to the contract amount. *See* Minn.Stat. § 471.345, subd. 3; St. Paul, Minn., Code of Ordinances, Part III, Title IV, Ch. 82, § 82.02. A central reason for competitive bidding is to eliminate an official's discretion on matters open to fraud, favoritism, folly and extravagance. *Griswold v. Ramsey Cnty.,* 242 Minn. 529, 536, 65 N.W.2d 647, 652 (1954). One way to avoid abuse is to prohibit any "material change" in any bid after bids have been opened. Not all changes would violate the rule, but changes that are "substantial or material" do. *Lovering–Johnson, Inc. v. City of Prior Lake,* 558 N.W.2d 499, 502 (Minn.App.1997).

■ Whether a change is material depends on whether it gives a bidder "a substantial advantage or benefit" the other bidders lack. *Id.* And a change is substantial and material if it affects "the price, quality or quantity, or the manner of performance, or other things that go into the actual determination of the amount of the bid." *Foley Bros. v. Marshall,* 266 Minn. 259, 263, 123 N.W.2d 387, 390 (1963); *see also Lovering–Johnson,* 558 N.W.2d at 503. Given the importance of fraud-free public bidding, even bid instructions that allow the governmental entity to waive irregularities cannot negate the rule prohibiting material changes once a bid has been opened. *Lovering–Johnson,* 558 N.W.2d at 502.

In an unrelated case, *Lovering–Johnson Inc. v. City of Prior Lake,* which only coincidentally also involved Rochon, we addressed what constitutes a material change to a bid. 558 N.W.2d at 502. In *Lovering–Johnson,* the City of Prior Lake permitted Rochon to change a number on an alternate bid to include a minus sign, replacing a marked plus sign, after the bids for the construction of a maintenance and storage facility had been opened. 558 N.W.2d at 501. The change lowered its bid from $2,625,601 to $2,582,601 and displaced Lovering–Johnson, Inc. as the first-place bidder by about $7,000. *Id.* Rochon was awarded the project. *Id.* The district court held that the change was a clerical error not violating competitive bidding law, but we reversed. *Id.* at 502. We held that the change had materially modified the alternate bid because the change affected the bid price and it gave Rochon a substantial advantage, which was knowledge of the competitors' bids when the change occurred. *Id.* at 502–03; *see also Tele. Assocs., Inc. v. St. Louis Cnty. Bd.,* 364 N.W.2d 378, 382 (Minn.1985) (holding that bidder had unfair advantage when officials inserted a dollar amount into an incomplete bid).

Following this precedent, we hold that Shaw–Lundquist's bid modification was a material change. It occurred after Shaw–Lundquist knew the next lowest bid, allowing it to make its correction fully aware of how much it could increase its bid while yet retaining its place in the ranking. This circumstance would be enough to align our holding with precedent, but we add that this change was particularly troublesome on two additional grounds that call the fairness of the process into substantial doubt. The city allowed Shaw–Lundquist to change its bid not only to fix its error but also to add another $89,211, giving it both cake and icing. If there is some legitimate explanation for allowing the additional adjustment, it is at least not evident in the record. What's more, unlike Shaw–Lundquist, Doran Construction and Sand Companies were never given a chance to correct the disqualifying elements in their bids. So the appearance of both folly and favoritism arises.

We recognize the difference between this case and *Lovering–Johnson* in that Shaw–Lundquist's change did not actually displace a lower bidder. But the principles associated with reproach-free bidding are at least equally offended anytime a price change is allowed after the opening of all bids. The concern is the *possibility* of creating the opportunity for fraud or collusion, not only *actual* fraud or collusion. *See Lovering–Johnson,* 558 N.W.2d at 502; *Tele. Assocs.,* 364 N.W.2d at 382. That this case also included unexplained anomalies in the extra amount allowed and in the city's decision to invite one bidder, but not two others, to make changes that would keep its bid in play makes the change allowed more of a material and substantive concern than the change in *Lovering–Johnson.*

*Void Contract?*

Rochon also contends that the district court erred by declining to declare the contract between the city and Shaw–Lundquist null and void. It has been long established that a contract entered into in violation of competitive bidding laws is void. The supreme court has explained that a competitive bidding contract is void even "without any showing of actual fraud or an intent to commit fraud, if a procedure has been followed which emasculates the safeguards of competitive bidding." *Griswold,* 242 Minn. at 536, 65 N.W.2d at 652; *see also Coller v. City of St. Paul,* 223 Minn. 376, 389, 26 N.W.2d 835, 842 (1947) ("Failure to comply with requirements of the charter as to competitive bidding compels decision that the bid, the attempted modification of it, and the award of the contract on the bid as modified were void."); *Gale v. City of St. Paul,* 255 Minn. 108, 115, 96 N.W.2d 377, 381–82 (1959) (stating that competitive bidding requires "rigid adherence to the requirements" and "a violation of the requirements compels a decision which nullifies the contract awarded"); *Diamond v. City of Mankato,* 89 Minn. 48, 53–54, 93 N.W. 911 (1903) ("If, however, the forbidden act was in fact done, the contract is void without reference to the intent with which it was done . . . the purpose of the rule is to secure fair competition upon equal terms to all bidders."). Because Shaw–Lundquist made a material change to its bid after the bids were received and opened in violation of the competitive bidding laws, its contract with the city is void.

The district court did not casually disregard this precedent; it considered it but was convinced that voiding the contract would actually "create a whole host of additional lawsuits" with respect to Shaw–Lundquist and the subcontractors, and that this would make the project's future uncertain. It relied on the discretionary language of Minnesota Statutes section

555.06 (2010): "The court *may* refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." (Emphasis added). On that apparent discretion, it denied Rochon's request that it void Shaw–Lundquist's contract. Given the clear force of caselaw on the voidness question, we doubt this is a matter of judicial discretion. In any event, we decide this case on a narrower ground here; the district court was mistaken in its view that a declaratory judgment would not decide the controversy in this case. It may be that collateral disputes erupt, but that would not be uncommon in general contract disputes. The remaining controversy involved here, which is whether the contract between Shaw–Lundquist and the city is void as a matter of law, would necessarily terminate with the declaration that the contract is void. Rochon was entitled to declaratory judgment.

## DECISION

Shaw–Lundquist's bid modification after the public bid opening was a material change, rendering its adjusted bid invalid and the resulting contract with the city void. We therefore reverse the district court.

**Reversed.**